IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| ROBIN RICHARDSON | CIVIL ACTION |
| --- | --- |
| v. | NO. 20-cv-04466 |
| AMERICAN RED CROSS, et al. | |

**MEMORANDUM RE: DEFENDANTS' SUMMARY JUDGMENT MOTION**

**Baylson, J.**                                                                                                        **October 22, 2021**

### I. Introduction

This is an action against Defendants American Red Cross, Elliott-Lewis Corporation and John Does 1-5 for personal injuries suffered by Plaintiff Robin Richardson through the course of her duties working as a janitor at the headquarters of Defendant Red Cross. All parties have agreed to arbitrate this matter pursuant to Local Rule 53.2. Because Defendants moved for summary judgment prior to the parties' consent to arbitration, the Court must first rule on Defendants' summary judgment motion before arbitration can proceed. See Local Rules 53.2(4)(C). Viewing the evidence in the light most favorable to the nonmoving Plaintiff, there remains a genuine issue of material facts that would prevent resolution of Plaintiff's claims at the summary judgment stage. Accordingly, the Court will deny Defendants' Motion for Summary Judgment and order the matter to proceed to arbitration.

### II. Factual and Procedural History

Defendant American Red Cross owns the building where the incident occurred. American Red Cross subcontracted Defendant Elliot-Lewis Corporation to perform certain maintenance and facility management services for its five-story building, including the inspection and repair of the building's HVAC and other mechanical systems. Plaintiff worked as a janitor for Third Party

1

Defendant T.U.C.S. Cleaning Services, Inc. ("TUCS"), a cleaning company that had contracted with Defendants to provide janitorial staff for the Red Cross building.[1]  Plaintiff was mopping the floor on the fifth-floor women's restroom when she slipped and fell on a puddle on the floor due to water leaking from the ceiling above.  Jim Bradley, Elliott-Lewis's facilities manager at the American Red Cross building testified that the leak came from a valve on the building's steam HVAC system located in the maintenance room directly above the women's restroom.  ECF No. 26-4, Testimony of Jim Bradley at 42:15-45:19.  In the days following the incident, Defendant Elliot-Lewis Corporation's HVAC technician inspected the HVAC system and noted that the main valve, pilot valve, and gaskets required replacing and that the nuts, bolts, and flanges required tightening.

### III.     Parties' Contentions

Defendants American Red Cross and Elliott-Lewis Corporation move for summary judgment on the basis that they lacked actual or constructive notice of the water leak prior to Plaintiff's fall.  As evidence of this lack of notice, Defendants point to the testimony of Officer Whitehead, the security guard on duty at the date of the incident, who observed no water leak in the bathroom that day. Defendants also point to the testimony of Elliot-Lewis facilities manager Jim Bradley, who stated that he was not made aware of the leak until after the accident had occurred despite performing daily "walk throughs" of the building's HVAC system every day.  Defendants also rely on a work order summary from twelve days before the accident showing that an Eliot-Lewis employee had checked the HVAC pressures and turned on the building's steam supply,

---

[1] Defendants have filed a Third-Party Complaint against TUCS pursuant to the liability clause in their contract (ECF 8), but TUCS's role is not addressed in the summary judgment motion or response.

2

noting no irregularities with the system.  Considering these visual inspections, Defendants argue that there was no evidence that the leak was present for enough of a period of time in order for them to have been made aware of the hazard through the exercise of reasonable care.

Plaintiff contends that Defendants were made aware of the potential for the fifth floor to be exposed to dangerous water leaks well before the date of the accident.  The Chief Operating Officer of Defendant American Red Cross testified that there were periodic leaks of the steam system and at least one instance where a leak in the mechanical room seeped through a crack in the floor into the fifth floor women's restroom directly below. ECF No. 26-5, Testimony of Clifton Salas at 27:18-28:7.  Moreover there was a sign placed on the hose located in the mechanical room advising against its use due to the propensity for leaks through the floor.  ECF No. 26-4 Testimony of Jim Bradley at 52.  This sign had been in place since 2013 or 2014, at least four years before the accident occurred.  Id.  More importantly, however, Plaintiff contends that Defendants would have noticed the significant deterioration of the HVAC system and repaired it before the leak could have occurred if they had simply implemented a thorough, periodic inspection of the HVAC system.  Upon examination of the premises, Plaintiff's liability expert reported that the faulty condition of the HVAC system was readily apparent and would have been observable in the years leading up to the incident.  ECF No. 26-6, Report of Examination of Blake J. Pantuck, P.E., at 24-25.  Despite its faulty condition and the floor's propensity for leaks, Defendants implemented no formal inspection procedure for the steam system nor documentation affirming which party was responsible for inspecting the HVAC system and its PRV valve.  Id.  Plaintiff introduced testimony from the Eliot-Lewis facilities manager stating that he merely performed visual inspections of the mechanical room itself, rather than perform any preventative repairs.  ECF No. 26-4 at 35-36.

**IV.   Legal Standards**

A.  **Jurisdiction**

Though Plaintiff's claims sound in tort, the Court has federal jurisdiction under 28 U.S.C. § 1331. See Am. Nat'l Red Cross v. S.G., 505 U.S. 247, 257 (1992) (establishing that the Red Cross Charter's "sue and be sued" provision should be read to confer jurisdiction).  Venue is proper in this District pursuant to 28 U.S.C. § 1391 because the Defendants are subject to personal jurisdiction within this District. In addition, the incident, acts and/or omissions giving rise to Plaintiff's claims occurred within this District.

B.  **Standard of Review**

A district court should grant a motion for summary judgment if the movant can show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a).  A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A factual dispute is "material" if it "might affect the outcome of the suit under the governing law." Id.

Where the nonmoving party bears the burden of proof on a particular issue at trial, the moving party's initial burden can be met simply by showing the district court "that there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). The party opposing summary judgment must rebut by making a factual showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322.  The district court may grant summary judgment "[i]f the evidence is merely colorable, or is not significantly probative." Anderson, 477 U.S. at 249 (internal citations omitted). Under Rule 56, the Court must view the evidence in the light most

4

favorable to the nonmoving party and draw all justifiable inferences in favor of the nonmovant. Id. at 255 (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 158–59 (1970)).

V.   **Discussion**

Under Pennsylvania state law, actual notice of a harmful condition can be shown by evidence that a possessor of land either created the offending condition or that the condition is one that the possessor knew had frequently recurred. Moultery v. the Great A&P Tea Company, 422 A.2d 593, 596 (Pa. Super 1980). A possessor of land must protect a business invitee such as Plaintiff against both known dangers and any dangers which might be discoverable via the exercise of reasonable care. Gutteridge v. A.P. Green Services, Inc., 804 A.2d 643 (Pa. Super. 2002); see Rudy v. A-Best Products Co., 870 A.2d 330 (Pa. Super. 2005). In addition to the affirmative duty to inspect the premises, a possessor of land also has an affirmative duty to maintain its premises in a reasonably safe condition for the contemplated use of a business invitee, or to give adequate warning of any failure to maintain the premises. Lowe v. Pirozzi, 2006 WL 1147238 (E.D. Pa. 2006).

Defendants have produced evidence conveying that Defendants did not have notice of the leak prior to the incident because Defendants' employees failed to observe the leak before Plaintiff had slipped in the bathroom. For example, Officer Whitehead had not observed a leak on the day of the incident despite having checked the bathrooms hourly from 4pm onward. ECF 26-10, Testimony of Officer Whitehead at 11:6-18. Neither Defendant Elliott-Lewis facility manager Jim Bradley nor American Red Cross Chief Operating Officer Clifton Salas had been aware of the leak prior to the incident. ECF 26:4, Testimony of Jim Bradley at 45:6-11; ECF 26:5, Testimony of Clifton Salas 27:15-17.

Regardless of whether Defendants had knowledge of the leak immediately preceding the incident is not dispositive, however. Plaintiff has shown a genuine issue of material fact as to whether Defendants failed to implement testing and maintenance protocols for their HVAC system. Plaintiff produced evidence demonstrating that there existed no formal inspection procedure for the HVAC system nor documentation reporting who was responsible for the inspections, even though Elliot-Lewis was responsible for all HVAC repairs and maintenance. ECF 26:4, Testimony of Bradley at 35-37. A reasonable jury could therefore conclude that Defendants breached their affirmative duty to adequately inspect and maintain the premises, including the faulty HVAC system and cracked flooring which ultimately led to Plaintiff's injuries. While Defendants might not have been aware of the presence of the particular puddle of water before Plaintiff arrived to begin her shift, there is a genuine issue of material fact as to whether they had been aware of the faulty valves, cracked flooring, and the flooding likely to result therefrom.

## VI. Conclusion

Because there remains a genuine issue of material fact as to whether Defendants had notice of the hazardous conditions that caused the accident to occur, Defendants' summary judgment motion will be denied and both parties are directed to proceed with arbitration.

O:\CIVIL 20\20-4466 Richadson v American Red Cross\Richardson v. Red Cross 20-04466 S Opinion.docx